IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 25 2013
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| BRYAN PATRICK EASLEY, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § NO. 4:13-CV-589-A |
| | § |
| UNIVERSITY OF TEXAS AT ARLINGTON, | § |
| | § |
| Defendant. | § |

### MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed in the above-captioned action by defendant, University of Texas at Arlington, and a document titled "Motion for a Settlement Conference" filed by pro se plaintiff, Bryan Patrick Easley. Plaintiff filed a response to defendant's motion; defendant filed a reply to plaintiff's response, as well as a response to the motion for settlement conference. Having considered all of the parties' filings, plaintiff's complaint, and the applicable legal authorities, the court concludes that the motion to dismiss should be granted, and that the motion for settlement conference should be denied.

I.

Allegations of the Complaint

Plaintiff alleged the following in his complaint:

Plaintiff was enrolled as a student in defendant's Master of Business Administration ("MBA") program during the time period relevant here, approximately 2010-2011. Plaintiff read an online article dated April 9, 2010, that reported on defendant's "dire financial situation" and noted that "hundreds of jobs were at risk." Compl. at 2. Defendant's faculty members were aware of these issues, and were also aware that "foreign students pay a premium tuition compared with students who are Texas residents." Id. According to plaintiff, these factors caused defendant's faculty members to allow him to enroll in only one class during the spring semester of 2011, which left open a seat in other classes for premium-paying foreign MBA students. Defendant's faculty members were aware that plaintiff was a Texas resident and veteran, and that he was eligible for tuition exemption under the Hazelwood Act.

Dr. David Gray, one of plaintiff's professors and Associate Dean of the College of Business, stated during a management class in 2010 that "white males under the age of 40" (a category of which plaintiff is a member) were the only group against whom discrimination was lawful. Id. at 3. According to the

2

complaint, this misunderstanding of the law represents defendant's view and the view of its faculty.

In the fall of 2010, plaintiff enrolled in a management class taught by Dr. Susanna Khavul ("Khavul"). On the first night of class, during plaintiff's "personal introduction," he informed Khavul and the class of the "precarious nature" of his grades and grade point average. Id. At that time, plaintiff also informed Khavul and the class that he had previously worked for INS/USCIS,[1] and had served in the United States Army before returning to Texas in 1996 to pursue his education. During plaintiff's personal introduction, Khavul's "verbal and facial responses . . . clearly communicated an unfavorable opinion" of plaintiff's employment with INS/USCIS. Id.

Although plaintiff maintained a 95 average during the semester, Khavul gave him an 83 for class participation and for his second project, which brought plaintiff's overall semester grade down to an 89. Plaintiff disagreed with the grades, inasmuch as he had completed another class and was able to devote more time to Khavul's class after the first five weeks of the semester, and had resigned from employment with INS/USCIS so he could devote full time to his studies. Although plaintiff spoke

---

[1] Plaintiff presumably is referring to the federal government agency United States Citizenship and Immigration Services, formerly known as Immigration and Naturalization Services.

3

with Khavul about his grade after the semester, she refused to change it from an 89 to a 90. Had Khavul given plaintiff a 90, it would have increased his grade point average to 3.0, he would have been in good standing academically, and he would have been permitted to carry a full class load during the spring 2011 semester.

According to the complaint, Khavul's "surname is indicative of national origin from the central Asian region." Id. Khavul's decision to lower plaintiff's grade to an 89 "was influenced by her husband's national origin and [plaintiff's] service with INS/USCIS," and therefore was discrimination based on national origin. Id.

Dr. Rasheed ("Rasheed"), a professor of management and chair of that department, along with the department's grade committee, dismissed plaintiff's grade appeal in an email dated December 1, 2011, that failed to address all the issues raised by plaintiff. Rasheed's "national origin is of the central Asian region," id. at 4, and his decision to dismiss plaintiff's grade appeal was influenced by plaintiff's national origin and his employment with INS/USCIS.

Dr. Himarios ("Himarios"), a professor and Dean of the College of Business, is of Greek national origin. Himarios dismissed plaintiff's grade appeal via letter dated January 9,

4

2012, but failed to address all the issues raised by plaintiff. In an online article dated January 31, 2012, Himarios discussed fundraising initiatives in his capacity as "executive director of the Center for Global Academic Initiatives." Id. In the article, Himarios described as "profitable" efforts to promote defendant "around the world." Id. Himarios was aware that foreign students paid much greater tuition than students who are Texas residents, and he also was aware that plaintiff was allowed to enroll in only one class, thus leaving other classes open for foreign students who would pay premium out-of-state tuition. Himarios's decision to dismiss plaintiff's grade appeal was influenced by national origin and plaintiff's employment with INS/USCIS.

Dr. Cohen ("Cohen"), graduate school dean and Vice Provost for Academic Affairs, dismissed plaintiff's grade appeal via letter on May 15, 2012. An online article dated December 8, 2011, reported on a speech made by Cohen, wherein he stated that defendant had to "do more with less" and had to "do more and better with less." Id. at 4. Cohen was aware that "foreign students" pay premium tuition as compared to students who are Texas residents. Id. Cohen was aware that plaintiff was allowed to enroll in only one class per semester, thus leaving open a seat in other classes for premium-paying foreign students.

5

Cohen's decision to dismiss plaintiff's grade appeal was influenced by national origin.

The complaint alleged that plaintiff has been "harmed in terms of time and money by the decisions of [defendant's] faculty members influenced by/based on race, color, national origin, or sex." Id. at 5. Following the fall 2010 semester, plaintiff has only been permitted to enroll in one class per semester, thus extending the time needed to complete his MBA, increasing the costs of attending graduate school, and "delay[ing] the increased revenues associated with having an MBA." Id.

Plaintiff alleged claims against defendant pursuant to Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(d) ("Title VI"), and Title IX of the Education Amendments of 1972 ("Title IX"). By way of relief sought, the complaint asked that the court: "reverse the decisions by [defendant's] faculty members that were based on/influenced by race, color, national origin, or sex," Compl. at 5; compel defendant to grant him the one point needed to raise his grade point average in Khavul's class from an 89 to a 90; and, compel defendant to provide plaintiff a free copy of his transcript showing plaintiff is in good academic standing with defendant.

II.

Standards Applicable to Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. at 678. To allege a plausible right to relief,

the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In adjudicating defendant's motion, the court may consider the complaint and its proper attachments.

III.

Application of Law to Facts

Under Title VI, no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d. To state a claim under Title VI, plaintiff must allege facts that show the defendant intentionally discriminated against him on the basis of race, color, or national origin, and that defendant receives federal financial assistance. Alexander v. Sandoval, 532 U.S. 275, 280 (2001).

Similarly, Title IX provides that, subject to exceptions not applicable here, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a claim under Title IX requires plaintiff to allege that defendant (1) received federal financial assistance, and (2) excluded him from participation in defendant's educational programs because of his sex. Cannon v. Univ. of Chicago, 441 U.S. 677, 680 (1979).

One basis of the motion to dismiss is that plaintiff failed to allege that defendant is a recipient of federal financial assistance. The court agrees that the complaint is deficient in that respect. Whether or not that omission alone warrants dismissal, as defendant argues, the court is granting the motion to dismiss because the complaint contains no factual basis to support a claim under either Title VI or Title IX.

Plaintiff alleges that the adverse decisions by Khavul, Rasheed, and Himarios were all influenced by his "national origin" and "service with INS/USCIS." Compl. at 2-4. Discrimination on the basis of prior employment with a federal agency such as INS/USCIS is not prohibited by either Title VI or Title IX, so that allegation fails to state a claim for relief.

The contention that discrimination was based on plaintiff's national origin is entirely conclusory. The court can locate no facts in the complaint, and plaintiff has directed the court to

9

none, that would allow even an inference that national origin played a role in any decision or action by Khavul, Rasheed, or Himarios. No facts are found in the complaint linking any of those actions or decisions with plaintiff's national origin. The allegation that Khavul's "verbal and facial responses during my personal introduction clearly communicated an unfavorable opinion" of plaintiff's employment with INS/USCIS, Compl. at 3, says nothing about plaintiff's national origin. The same is true about the allegation that Khavul's surname shows her husband is of Asian national origin, which plaintiff claims influenced Khavul's decision to lower his grade to an 89. This assertion is entirely conclusory and is unsupported by any facts. Nor are facts alleged to show that students of other national origins were treated differently under similar circumstances.

Plaintiff makes the same type of conclusory, unsupported assertions regarding Rasheed and Himarios. As to Rasheed, plaintiff merely states that Rasheed's national origin is "of the central Asian region," Compl. at 4, and then leaps to the conclusion that Rasheed's decision to dismiss plaintiff's grade appeal was influenced by national origin and plaintiff's employment with INS/USCIS. The same conclusory assertion is made about Himarios, with the added contention that Himarios was aware that plaintiff paid less tuition as a Texas resident than that

paid by non-residents. Plaintiff's allegations about his national origin claim under Title VI are exactly the type of "labels and conclusions," and "the-defendant-unlawfully-harmed-me-accusations," which are insufficient to state a claim for relief or survive a motion to dismiss. Iqbal, 556 U.S. at 678.

Plaintiff also alleges that defendant discriminated against him because he is Texas resident and pays in-state tuition, whereas "foreign" students pay a higher, premium tuition. Consequently, defendant limited plaintiff to only one class per semester in order to make room in the MBA program for "foreign" students who paid greater tuition.

Plaintiff does not expound on his use of the word "foreign" in the complaint. Considering the context in which the word is used in the complaint, it distinguishes students who are not Texas residents, who pay a lower tuition, from non-Texas residents, who pay higher, premium tuition, whether the "foreign" student is a Caucasian individual from one of the remaining forty-nine United States of America, or a student from another country.[2]

The Supreme Court has held that states can charge

---

[2] If plaintiff intended "foreign" to refer to students of other national origins, he has still failed to state a claim as it concerns payment of in-state, resident tuition. Students of other national origins may also be Texas residents and eligible for in-state, resident tuition, just as other Caucasian students may be "foreign," i.e., non-Texas-resident students, who must pay higher tuition.

"preferential tuition" to its in-state residents without running afoul of the Constitution. Vlandis v. Kline, 412 U.S. 441, 452-53 (1973). Plaintiff has directed the court to no authority showing that the Supreme Court has departed from that principal stated in Vlandis, or that Congress or the State of Texas have legislated otherwise. It would thus be absurd for this court to conclude that plaintiff has stated a claim of discrimination based on national origin because a public university lawfully establishes different tuition rates for resident and non-resident students.

As shown by the foregoing, plaintiff has alleged no facts to support his claim of discrimination on the basis of national origin in violation of Title VI. Even less is alleged to support a claim under Title IX, which requires a showing of intentional discrimination the basis of sex. The complaint alleges nothing as would show that defendant intentionally treated plaintiff differently than any female student under the same circumstances.

Plaintiff obviously believes that defendant did not treat him fairly. However, neither Title VI nor Title IX proscribes general unfairness--only intentional discrimination on one of the enumerated bases. It is insufficient for plaintiff to allege that he is a white male and that unfavorable treatment must therefore be based on his sex or national origin. Nothing in the

complaint supports such a conclusion. Stated differently, nothing in the complaint alleges a claim for relief that is plausible on its face. <u>Twombly</u>, 550 U.S. at 570.

IV.

<u>ORDER</u>

Therefore,

The court ORDERS that all claims and causes of action brought by plaintiff, Bryan Patrick Easley, against defendant, University of Texas at Arlington, be, and are hereby, dismissed with prejudice.

The court further ORDERS that plaintiff's motion for settlement conference be, and is hereby, denied.

SIGNED October 25, 2013.

_____
JOHN McBRYDE
United States District Judge

13